# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Mike Buetow, Gary Steven Richardson, Jr.,
Joe Rohrbach, Jeff Brosi, Dennis Deeb, and
Chris Lewison, individually on behalf of
themselves and all other Minnesota residents
and entities similarly situated,

Plaintiffs,

Civ. No. 07-3970 (RHK/JSM)
**MEMORANDUM OPINION
AND ORDER**

v.

A.L.S. Enterprises, Inc., Cabela's Inc.,
Gander Mountain Co., Bass Pro Shops, Inc.,
and Browning,

Defendants.

---

Troy J. Hutchinson, Vincent J. Esades, Heins Mills & Olson, P.L.C., Minneapolis,
Minnesota, Ernest W. Grumbles III, Thomas J. Leach, Merchant & Gould, Minneapolis,
Minnesota, for Plaintiffs.

Michael D. Leffel, Naikang Tsao, Theresa A. Andre, Bree Grossi Wilde, Foley & Lardner
LLP, Madison, Wisconsin, John D. Sear, Bowman and Brooke LLP, Minneapolis,
Minnesota, for Defendant A.L.S. Enterprises, Inc.

William A. LeMire, Christopher D. Newkirk, Arthur, Chapman, Kettering, Smetak &
Pikala, P.A., Minneapolis, Minnesota, for Defendant Cabela's, Inc.

Charles F. Webber, Elizabeth Shields Keating, Faegre & Benson LLP, Minneapolis,
Minnesota, Dudley W. Von Holt, Robert J. Wagner, Thompson Coburn LLP, St. Louis,
Missouri, for Defendant Gander Mountain Co.

Brian N. Johnson, Halleland Lewis Nilan & Johnson, P.A., Minneapolis, Minnesota,
Omri E. Praiss, Bryce J. Bartlett, Husch Blackwell Sanders LLP, St. Louis, Missouri, for
Defendant Bass Pro Shops, Inc.

Karen Hanson Riebel, Elizabeth R. Odette, Lockridge Grindal Nauen P.L.L.P., Minneapolis, Minnesota, Andrew H. Stone, John A. Pearce, Jones Waldo Holbrook & McDonough, P.C., Salt Lake City, Utah, for Defendant Browning.

---

## INTRODUCTION

This purported class action concerns hunting clothing manufactured and/or sold by Defendants A.L.S. Enterprises, Inc. ("ALS"), Cabela's, Inc. ("Cabela's"), Gander Mountain Co. ("Gander Mountain"), Bass Pro Shops, Inc. ("Bass Pro"), and Browning (collectively, "Defendants"). Plaintiffs allege that Defendants have misrepresented that their clothing eliminates 100% of human odors and is capable of being reactivated or regenerated in a household clothes dryer after the clothing has become saturated with odors.

Defendants previously moved to dismiss the Complaint, arguing that Plaintiffs had failed to adequately plead their claims. By Order dated January 18, 2008, the Court granted those Motions in part and denied them in part, concluding that Plaintiffs had failed to specify which Defendants were responsible for the particular unlawful conduct alleged in the Complaint. The Court granted Plaintiffs leave to amend; they filed an Amended Complaint on January 29, 2008.

Presently pending before the Court are several Motions filed by Defendants vis-a-vis the Amended Complaint. First, all Defendants argue that Count IV of the Amended Complaint, which alleges a civil conspiracy among them, must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Second, Bass Pro and

Browning argue that, absent the conspiracy claim, Plaintiffs lack standing to sue them because Plaintiffs have nowhere alleged that they purchased any products from them. Accordingly, they argue that they should be dismissed from this case in its entirety if the Court dismisses the conspiracy claim. Third, and finally, Gander Mountain argues that Plaintiffs have not adequately pleaded the non-conspiracy claims asserted against it. For the reasons set forth below, the Court will grant the Motions in part and deny them in part.

## BACKGROUND

The key allegations in this case are set forth in the Court's Order of January 18, 2008, and for the sake of brevity will not be repeated here. See Carlson v. A.L.S. Enters., Inc., Civ. No. 07-3970, 2008 WL 185710 (D. Minn. Jan. 18, 2008). As pertinent to the present Motions, Plaintiffs' Amended Complaint alleges the following facts: (1) Defendants knowingly misrepresent that their odor-eliminating clothing eliminates all human odors and can be reactivated or regenerated in a household clothes dryer; (2) Defendants conceal from the public the true nature of their odor-eliminating clothing; (3) each Defendant knows that each other Defendant makes the same claims; and (4) each Defendant knows that each other Defendant actively conceals the truth about its clothing. (Am. Compl. ¶ 122.) Plaintiffs also assert that Cabela's, Gander Mountain, Bass Pro, and Browning agreed, as part of several licensing agreements with ALS, to use ALS's trademarks, logos, and other promotional materials, which include misrepresentations about the odor-eliminating capabilities of ALS's "Scent-Lok" product. (Id. ¶¶ 2, 35.)

-3-

**STANDARD OF REVIEW**

The recent Supreme Court case of <u>Bell Atlantic Co. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955 (2007), sets forth the standard to be applied when evaluating a motion to dismiss under Rule 12(b)(6).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 1974.  Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> at 1964-65 (citation omitted).  Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery."  <u>Id.</u> at 1968 (citation omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible."  <u>Id.</u> at 1974.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  <u>Id.</u> at 1964-65.  A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of its factual allegations.  <u>Id.</u>  Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  <u>Id.</u> at 1965 (citation omitted).

# ANALYSIS

## I.     The conspiracy claim will be dismissed.

As Plaintiffs concede, the "hallmark of [a] conspiracy is agreement."  (Mem. in

Opp'n at 4 (quoting Jennings v. Emry, 910 F.2d 1434, 1441 (7th Cir. 1990)).)  A plaintiff

asserting a conspiracy claim, therefore, must allege sufficient facts to suggest a "meeting

of the minds" to participate in unlawful activity among the alleged conspirators.  K&S

P'ship v. Cont'l Bank, N.A., 952 F.2d 971, 980 (8th Cir. 1991); Manis v. Sterling, 862

F.2d 679, 681 (8th Cir. 1988).  This is often difficult, as "conspiracies by their nature

usually are clandestine" – plaintiffs, therefore, typically are not "in a position to allege

with precision the specific facts giving rise to the claim."  Stephenson v. Deutsche Bank

AG, 282 F. Supp. 2d 1032, 1070 (D. Minn. 2003) (Kyle, J.) (quoting White v. Walsh, 649

F.2d 560, 561 (8th Cir. 1981)).  Nevertheless, a plaintiff cannot simply incant the magic

words "conspiracy" or "agreement" in order to adequately plead a conspiracy claim.  See

Twombly, 127 S. Ct. at 1965 (plaintiff must plead "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do"); accord Twombly

v. Bell Atl. Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003) ("simply alleging that two

or more defendants participated in a 'conspiracy,' without more, is insufficient to

withstand a motion to dismiss"), rev'd, 425 F.2d 99 (2d Cir. 2005), rev'd, __ U.S. __, 127

S. Ct. 1955 (2007).  As the district court in Twombly aptly noted:

> While conclusory allegations may not suffice to state a claim, the Court must
> be cautious to avoid making findings or assumptions of fact without a
> complete factual record, and plaintiffs must not be expected to adduce

evidence without having had the opportunity for discovery. *The crucial inquiry, therefore, is what inferences naturally arise from the facts that plaintiffs have pled, taking all facts in the Amended Complaint as true.*

313 F. Supp. 2d at 182 (emphasis added).

Relying heavily on Twombly, Defendants argue that the conspiracy claim here must be dismissed because Plaintiffs' allegations of an illegal "agreement" are conclusory. (See ALS Mem. at 6-8; Joint Reply at 2-4.) They further ague that the few facts properly pleaded are insufficient to create an inference of an unlawful agreement among Defendants. The Court agrees.

In support of their conspiracy claim, Plaintiffs essentially point to nothing more than Defendants' parallel conduct – that is, each Defendant "knowingly misrepresented that [its] odor-eliminating clothing eliminates all human odors and can be reactivated or regenerated in a household dryer," as well as the concealment of those facts from the general public. (Am. Compl. ¶ 122.) As the Twombly Court noted, however, parallel conduct is, at best, ambiguous; while such conduct is consistent with a conspiracy, it is equally consistent with other, non-nefarious explanations. See 127 S. Ct. at 1964 ("parallel business behavior is admissible circumstantial evidence from which the fact finder may infer agreement, [but] it falls short of conclusively establish[ing] agreement") (internal quotation marks omitted). Accordingly, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Id. at 1966.

This conclusion is particularly true here, because Plaintiffs specifically allege that ALS *requires* Defendants to use trademarks, logos, and promotional materials provided to them by ALS.  (Am. Compl. ¶ 35.)  Hence, it is not surprising that ALS's alleged misrepresentations about "Scent-Lok" were repeated by each of the other Defendants; ALS mandated that to be the case.  Plaintiffs argue that the licensing agreements between ALS and each Defendant are "direct evidence" of a conspiracy (Mem. in Opp'n at 5-8), but in the Court's view the exact opposite is true:  the licensing agreements actually *negate* any suggestion of a conspiracy because they provide a plausible alternative explanation for Defendants' parallel conduct.  Under these circumstances, no conspiracy may be inferred.  See Twombly, 127 S. Ct. at 1972 (complaint did not suggest conspiracy when "an obvious alternative explanation" existed for defendants' conduct).[1]

---

[1] Plaintiffs argue in their Memorandum in Opposition that "the licensing agreements alone constitute sufficient evidence of a conspiracy."  (Mem. in Opp'n at 6.)  They reiterated that assertion at oral argument, contending that, under Twombly, simply "referencing a written agreement [is] sufficient to plead a conspiracy."  (4/22/08 Hearing Tr. at 14.)  The Court does not agree.  "[I]n general terms, the act of combination, standing alone, is not actionable as a conspiracy."  Bergquist v. Felland (In re O-Jay Foods, Inc.), Civ. No. 4-91-566, 1991 WL 378164, at *20 (D. Minn. Nov. 21, 1991) (MacLaughlin, J.) (applying Minnesota law).  Obviously, not every contract is evidence of a conspiracy; only when a contract contains an agreement to violate the law have courts found conspiracies to exist, as the cases cited by Plaintiffs demonstrate.  See United States v. Paramount Pictures, Inc., 334 U.S. 131, 143-44 (1948) (licensing agreements between movie distributor and movie exhibitors required exhibitors to set minimum prices, which as a result regulated competition among exhibitors); Omnicare v. Unitedhealth Group, Inc., 524 F. Supp. 2d 1031, 1038 (N.D. Ill. 2007) (merger agreement restricted party's ability to compete in relevant marketplace).  Indeed, the Twombly plaintiffs alleged that the defendants had made "unfair agreements . . . designed to sabotage" competitors in the local-telephone-services market, see 127 S. Ct. at 1962, and yet the Court held that the complaint had been properly dismissed for failing to adequately allege facts supporting a conspiracy.  Here, Plaintiffs have nowhere alleged that the licensing agreements contained illegal terms or otherwise required illegal conduct on Defendants' part, and hence the licensing agreements add little (if anything) to the mix.  In any event, even if the licensing agreements

Plaintiffs also argue that they have adequately pleaded a conspiracy claim because they have alleged that each Defendant knew that all other Defendants made similar inaccurate claims about their products.  (Mem. in Opp'n at 5.)  They assert that "knowledge of a fraud being committed by competitors and the affirmative agreement to engage in that same fraudulent behavior is a sufficient allegation of a meeting of the minds."  Id.  Yet, Plaintiffs have cited no authority for this proposition, and the Court does not believe that Company A's knowledge that Company B is engaging in fraudulent conduct, followed by Company A's decision to engage in the same conduct, necessarily suggests an illicit agreement between Company A and Company B.  Cf. Twombly, 127 S. Ct. at 1964 (noting that conscious decision to engage in parallel conduct, *i.e.*, "conscious parallelism," is insufficient to support a claim of conspiracy in restraint of trade under the Sherman Act).  Moreover, Plaintiffs' assertion that each Defendant "knew" it was misrepresenting the efficacy of its products and their ability to be regenerated is conclusory – Plaintiffs have simply failed to plead any facts suggesting *how* or *when* Defendants purportedly obtained that knowledge.[2]

were, in some sense, conspiratorial evidence, they would at most suggest only that there were four individual conspiracies – between ALS, on one hand, and each of Cabela's, Gander Mountain, Bass Pro, and Browning on the other – and not one overarching conspiracy involving all five Defendants.  This further undermines Plaintiffs' conspiracy claim.

[2] Interestingly, "[m]ost general English dictionaries fail to list *conclusory* as a main entry."  B. Garner, A Dictionary of Modern Legal Usage 191 (2d ed. 1995).  The word's meaning, however, is important in this case: "expressing a factual inference without expressing the fundamental facts on which the inference is based."  Id.  Here, the "factual inference" Plaintiffs assert is that Defendants knew the representations they were making about their products were false; the Amended Complaint, however, is bereft of "the fundamental facts on

Finally, at oral argument Plaintiffs asserted that requiring them to plead their conspiracy claim in greater detail would, in essence, require heightened, Rule 9(b)-like pleading for conspiracy claims.  (4/22/08 Hearing Tr. at 17.)  Yet, in concluding that the conspiracy claim has not been adequately pleaded here, the Court is in no way suggesting that Plaintiffs were required to plead that claim with particularity under Federal Rule of Civil Procedure 9(b).  See Stephenson, 282 F. Supp. 2d at 1070 ("conspiracy allegations need not be pleaded with particularity under [Rule] 9(b)").  Rather, the defect in the conspiracy claim was laid bare by Twombly:  Plaintiffs were required to plead facts plausibly suggesting an illegal agreement, and Defendants' parallel conduct, when viewed in conjunction with the licensing agreements requiring such conduct, is simply insufficient to "nudge" Plaintiffs' claims across the conceivable/plausible line.  127 S. Ct. at 1974.[3]

---

which th[at] inference is based."  Id.

    [3] At oral argument, Plaintiffs also asserted that they were aware of additional facts suggesting a conspiracy that they had not pleaded in the Amended Complaint.  Assuming *arguendo* that is true, it does not save the conspiracy claim from dismissal.  In the Court's view, a plaintiff cannot intentionally omit facts relevant to a particular claim in a complaint and then later attempt to resuscitate that claim, after dismissal, by seeking to plead those omitted facts.  See EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 780 (7th Cir. 2007) (noting that pleading rules are designed to "[e]ncourag[e] a plaintiff to plead what few facts can be easily provided" and that a plaintiff should "alert[] the defendant to basic, critical factual allegations").  Furthermore, the assertion that Plaintiffs possess additional facts suggesting a conspiracy claim was also conclusory – Plaintiffs made no attempt at oral argument to state what those additional facts are.

For these reasons, the Court concludes that Plaintiffs have failed to adequately plead their conspiracy claim (Count IV of the Amended Complaint), and it will be dismissed.

## II.    Plaintiffs lack standing to sue Bass Pro and Browning.

Bass Pro and Browning argue that once the conspiracy claim is dismissed, the other claims asserted against them must also be dismissed because Plaintiffs do not allege any direct contact with them.  Stated differently, "no named Plaintiff alleges that he purchased any Scent-Lok products from" Bass Pro or Browning, and "no named Plaintiff alleges that he had any direct contact with Bass Pro [or Browning] in any respect – no named Plaintiff even alleges that he ever heard Bass Pro's [or Browning's] alleged misrepresentations, let alone relied on them."  (Bass Pro Mem. at 8.)  In the absence of any direct contact, Bass Pro and Browning argue that Plaintiffs cannot show an injury traceable to their conduct and, as a result, Plaintiffs lack standing to sue them.  (See id. at 6-9.)  The Court agrees.

Plaintiffs concede that, in order to establish constitutional standing vis-a-vis these Defendants, they must show "a personal injury fairly traceable to [Bass Pro's and Browning's] allegedly unlawful conduct."  (Mem. in Opp'n at 9.)[4]  They further concede

---

[4] Constitutional standing must be distinguished from statutory standing.  The former refers to "whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue" under Article III of the United States Constitution.  E.g., United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003).  The latter concerns whether the person whose standing is challenged is a proper plaintiff under the terms of the statute in question.  E.g., Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1211 (10th Cir. 2006).  Here, there is no dispute that Plaintiffs enjoy statutory standing under the

that they have not pleaded any direct contact with Bass Pro or Browning sufficient to establish an injury traceable to their conduct.  Nevertheless, Plaintiffs argue that they enjoy standing to sue Bass Pro and Browning under the "juridical-link" exception.  (See id. at 11-13.)  First described in La Mar v. H & B Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973), the juridical-link exception "answers the question of whether two defendants are sufficiently linked so that a plaintiff with a cause of action against only [one] defendant can also sue the other defendant."  In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162, 165 (D. Mass. 2004).  The exception applies where the named plaintiffs in a class action have no relationship with one or more named defendants, but all of the defendants are related in some fashion – whether by contract, conspiracy, or otherwise – such that "a single resolution of the dispute would be expeditious."  La Mar, 489 F.2d at 466.  While the Eighth Circuit has not opined on the propriety of the juridical-link exception, its use has been approved by several other Courts of Appeals.  See, e.g., Payton v. County of Kane, 308 F.3d 673 (7th Cir. 2002); Moore v. Comfed Sav. Bank, 908 F.2d 834 (11th Cir. 1990).

Even assuming arguendo that the Eighth Circuit would approve the juridical-link exception, Plaintiffs cannot invoke that exception to establish standing here, for two reasons.  First, now that the conspiracy claim has been dismissed, there exists no "link" connecting all of the Defendants.  Plaintiffs point to the licensing agreements in an effort

---

Minnesota consumer-protection statutes in Counts I-III of the Amended Complaint.  Hence, only the question of Article III standing is implicated in this case.

to establish such a link, but they ignore that the Defendants were not parties to a global

licensing agreement; rather, there were several such agreements, entered into individually

between ALS and each of Cabela's, Gander Mountain, Bass Pro, and Browning.  A

juridical link among defendants typically is found "[w]here all members of the defendant

class are officials of a single state and are charged with enforcing or uniformly acting in

accordance with a state statute," or where "there is a contractual obligation among *all*

defendants."  <u>Dash v. FirstPlus Home Loan Owner Trust 1996-2</u>, 248 F. Supp. 2d 489,

504-05 (M.D.N.C. 2003) (emphasis added) (citations omitted); <u>accord</u> <u>Mull v. Alliance</u>

<u>Mortgage Banking Corp.</u>, 219 F. Supp. 2d 895, 909 (W.D. Tenn. 2002).  "Neither

situation exists in the present action because Defendants *do not have contractual*

*relationships with each other* and Plaintiffs do not challenge any state or local statute."

<u>Dash</u>, 248 F. Supp. 2d at 505 (emphasis added).

Second, and more importantly, <u>La Mar</u> discussed the juridical-link exception in the

context of class certification under Federal Rule of Civil Procedure 23; standing was not

at issue.  <u>See</u> 489 F.2d at 465-66.  While some courts have held that plaintiffs may use the

juridical-link exception as a means to establish standing, <u>see, e.g.</u>, <u>Glover v. Standard</u>

<u>Fed. Bank</u>, Civ. No. 97-2068, 2001 WL 34635707, at *2-3 (D. Minn. June 11, 2001)

(Frank, J.), a substantial number of courts have rejected such attempts.  <u>See, e.g.</u>, <u>Johnson</u>

<u>v. GEICO Cas. Co.</u>, 516 F. Supp. 2d 351, 356 (D. Del. 2007) ("Courts considering [the

juridical-link] doctrine have concluded that it does not apply to questions of standing

raised at the pleading stage."); <u>In re Franklin Mut. Funds Fee Litig.</u>, 388 F. Supp. 2d 451,

462 n.7 (D.N.J. 2005) ("The juridical link doctrine has no bearing on standing; rather, its

place lies in a Rule 23 analysis"); <u>Henry v. Circus Circus Casinos, Inc.</u>, 223 F.R.D. 541,

544 n.2 (D. Nev. 2004) ("The Court declines to import <u>La Mar</u>'s 'juridical link' doctrine

into an Article III analysis.  A doctrine developed under Rule 23 based on judicial

efficiency and expedience does not play a role in an Article III standing analysis.").[5]

Given the Supreme Court's admonition that Article III standing cannot be overlooked

"for the sake of convenience and efficiency," <u>Raines v. Byrd</u>, 521 U.S. 811, 820 (1997),

and that "a plaintiff who has been subject to injurious conduct of one kind [does not]

possess by virtue of that injury the necessary stake in litigating conduct of another kind,

*although similar*, to which he has not been subject," <u>Blum v. Yaretsky</u>, 457 U.S. 991, 999

(1982) (emphasis added), the Court agrees with those cases holding that the juridical-link

exception cannot be used to circumvent a plaintiff's obligation to establish standing.[6]

---

[5] <u>See also</u> <u>Lindquist v. Farmers Ins. Co. of Ariz.</u>, No. CV 06-597, 2008 WL 343299, at *9 (D. Ariz. Feb. 6, 2008); <u>Siemers v. Wells Fargo & Co.</u>, No. C05-4518, 2006 WL 3041090, at *6 (N.D. Cal. Oct. 24, 2006); <u>Popoola v. M.D.-Individual Practice Assoc.</u>, 230 F.R.D. 424, 431 (D. Md. 2005); <u>In re Eaton Vance</u>, 220 F.R.D. at 170-71; <u>Faircloth v. Nat'l Home Loan Corp.</u>, 313 F. Supp. 2d 544, 550-51 (M.D.N.C. 2003); <u>Matte v. Sunshine Mobile Homes, Inc.</u>, 270 F. Supp. 2d 805, 822 (W.D. La. 2003).

[6] That this case is brought as a class action also is of no moment vis-a-vis standing.  <u>See, e.g.</u>, <u>Hastings v. Wilson</u>, Civ. No. 05-2566, 2007 WL 333617, at *4 (D. Minn. Feb. 1, 2007) (Kyle, J.) ("Plaintiffs may not use Rule 23 to circumvent their obligation to establish standing"), <u>aff'd</u>, 516 F.3d 1055 (8th Cir. 2008); <u>Dash</u>, 248 F. Supp. 2d at 503 ("Plaintiffs may not use the procedural device of a class action to bootstrap themselves into standing [they] lack[].") (internal quotation marks and citation omitted).

Accordingly, the Court determines that Plaintiffs lack standing to sue Bass Pro and Browning in Counts I-III of the Amended Complaint, and those claims will be dismissed against them.

**III.     Counts I through III are adequately pleaded against Gander Mountain.**

Finally, Gander Mountain argues that Plaintiffs have not properly pleaded Counts I-III against it because the two named Plaintiffs who bought "Scent-Lok" products from Gander Mountain, Joe Rohrbach and Jeff Brosi, have not specified how they were "deceived" by Gander Mountain's conduct.  (Gander Mountain Mem. at 2-3.)  According to Gander Mountain, the purported failure to identify proximate causation between these Plaintiffs' purchases and Gander Mountain's alleged misrepresentations mandates the dismissal of Counts I-III.  (Id.)  The Court disagrees.

Gander Mountain relies upon the Eighth Circuit's recent decision in Schaaf v. Residential Funding Corp., 517 F.3d 544 (8th Cir. 2008), in support of its argument.  In Schaaf, the Eighth Circuit held that in order to state a claim under the Minnesota Consumer Fraud Act (which is the statute implicated in Count I here), a plaintiff must plead facts showing that the defendant's actions caused the plaintiff's losses.  Id. at 552. The Schaaf plaintiffs failed in this regard because they did not plead facts linking the defendant's purportedly unlawful conduct to their damages.  Id. at 553.

By contrast here, the Amended Complaint alleges that Gander Mountain misrepresented – in its marketing and advertising, and on product tags and labels – that its odor-eliminating clothing eliminates all human odors and can be reactivated in a

-14-

household clothes dyer (Am. Compl. ¶ 23), and that Rohrbach and Blasi "would not have

purchased the odor eliminating clothing but for the [mis]representations made by" Gander

Mountain (id. ¶¶ 14-15).  In the Court's view, these allegations "suffice to show the

required causal connection between [Gander Mountain's] wrongful conduct and

[Rohrbach's and Blasi's] losses." Schaaf, 517 F.3d at 549.  Indeed, it is hard to conceive

what more Gander Mountain would have Plaintiffs plead in order to provide "some

indication of the loss and the causal connection that [Plaintiffs] ha[ve] in mind." Id.

(quoting Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that ALS's Motion to Dismiss (Doc. No. 73), Cabela's Motion to Dismiss

(Doc. No. 81), Bass Pro's Motion to Dismiss (Doc. No. 77), and Browning's Motion to

Dismiss (Doc. No. 83) are each **GRANTED**, and Gander Mountain's Motion to Dismiss

(Doc. No. 86) is **GRANTED IN PART** and **DENIED IN PART**.  Count IV of the

Amended Complaint is **DISMISSED WITH PREJUDICE**, and Counts I through III of

the Amended Complaint are **DISMISSED WITH PREJUDICE** vis-a-vis Bass Pro and

Browning.


Dated: May 5, 2008                                    s/Richard H. Kyle
                                                      RICHARD H. KYLE
                                                      United States District Judge

-15-