## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mike Buetow, Gary Steven Richardson, Jr.,
Joe Rohrbach, Jeff Brosi, and Dennis Deeb,
individually on behalf of themselves and all
other Minnesota residents and entities
similarly situated,

Plaintiffs,

Civ. No. 07-3970 (RHK/JJK)
**MEMORANDUM OPINION
AND ORDER**

v.

A.L.S. Enterprises, Inc., Cabela's Inc.,
Cabela's Wholesale, Inc., and
Gander Mountain Company,

Defendants.

---

Renae D. Steiner, Rachel L. B. Stoering, Heines Mills & Olson, PLC, Minneapolis, Minnesota, Ernest W. Grumbles, III, Thomas J. Leach, III, Merchant & Gould, PC, Minneapolis Minnesota, for Plaintiffs.

Naikang Tsao, Foley & Lardner LLP, Madison, Wisconsin, John D. Sear, Bowman and Brooke LLP, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

This lawsuit concerns hunting clothing manufactured and/or sold by Defendants

A.L.S. Enterprises, Inc. ("ALS"), Cabela's, Inc., Cabela's Wholesale, Inc., and Gander

Mountain Co. ("Gander Mountain") (collectively, "Defendants").  Plaintiffs[1] allege that

Defendants have misrepresented that their clothing eliminates human odor and is capable

of being "reactivated or regenerated in a household [clothes] dryer after the clothing has

become saturated with odors."  (Sec. Am. Compl. ("SAC") ¶ 2.)  All parties now move

for summary judgment.  For the reasons set forth below, the Court will grant all Motions

in part and deny them in part.[2]

## BACKGROUND

Because game animals have an acute sense of smell, there is a demand for odor-

controlling clothing in the hunting market.  (Sesselmann Decl. ¶ 2.)  As a result, ALS

patented and began selling hunting clothing with embedded activated carbon ("carbon-

embedded clothing") under the brand name "Scent-Lok."  (Id. ¶¶ 3-5.)  Activated carbon

has the ability to adsorb human odor.  (Id. ¶ 3.)  ALS licenses its patent and Scent-Lok

brand to other retailers, including Defendants, who manufacture and sell their own

carbon-embedded clothing to consumers.  (Id. ¶¶ 13-15.)

Defendants have published countless advertisements promoting their carbon-

embedded clothing.  Almost all of these advertisements utilize the slogans "odor-

eliminating technology" or "odor-eliminating clothing."  (Wilde Decl. Exs. 17-18, 24, 28;

---

[1] Plaintiffs are Mike Buetow, Gary Steven Richardson, Jr., Joe Rohrbach, Jeff Brosi, and Dennis Deeb.

[2] This Court previously denied Plaintiffs' Motion for Class Certification.  (Doc. No. 234.)  The Court thereafter denied Plaintiffs' Motion for Reconsideration.  (Doc. No. 250.)  Plaintiffs then requested permission to appeal the certification question to the Eighth Circuit, which was denied. (Doc. No. 254.)

Grumbles Decl. Ex. 32.)[3]  Otherwise, Defendants' advertisements describe the clothing's ability to control odor in several different ways.  For example, many advertisements utilize these slogans and phrases such as "eliminates all types of odor" or "odor elimination."  (Wilde Decl. Exs. 20, 21, 23, 26.)  Others assert that the clothing can eliminate "100% of your scent" or "all human odor," thus making the hunter "scent-free." (Leach Decl. Exs. 7, 10, 12, 15.)  In addition, some advertisements utilize graphics indicating that odor cannot escape carbon-embedded fabric.  (Id. Exs. 17-19.)

Defendants have also published numerous advertisements stating that purchasers can "reactivate" carbon-embedded fabric in a standard clothes dryer after the activated carbon becomes saturated with odor.  (Id. Exs. 16, 21-22.)  Some of these advertisements claim that carbon-embedded clothing can be reactivated for further use without describing the extent to which odors can be removed from the activated carbon.  (Id. Ex. 21.)  Other advertisements state that reactivation will make the clothing "like new" or "pristine."  (Id. Exs. 16, 22.)

Plaintiffs claim that all of the above-referenced advertisements are false and/or misleading because Defendants' carbon-embedded clothing cannot "eliminate" odors and cannot be reactivated to be "like new" or "pristine."  Both Plaintiffs and Defendants have consulted with experts who have conducted extensive laboratory testing on Defendants' clothing.  While the results of such testing differ dramatically, Plaintiffs' and Defendants' experts agree that carbon-embedded clothing cannot eliminate 100% of a hunter's odor.

---

[3] Cabela's, Inc. asserts that it has not published any advertisements for carbon-embedded clothing since 1999 because Cabela's Wholesale is the entity responsible for product marketing. (Cabela's, Inc. Mem. in Supp. at 1-2.)

(Leach Decl. Exs. 28, 38; Hartman Dep. Tr. at 213, 225-29; Turk Dep. Tr. at 101.)

Moreover, the experts agree that carbon-embedded clothing, once saturated with odor,

cannot be reactivated to be "like new" or "pristine."  (Hartman Dep. Tr. at 168; Leach

Decl. Exs. 38, 41.)

On September 13, 2007, Plaintiffs commenced the instant action claiming that

Defendants' advertising is false and misleading in violation of various Minnesota state

laws.  Each Defendant now moves for summary judgment on all of Plaintiffs' claims.

Plaintiffs oppose these Motions and request partial summary judgment and injunctive

relief.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  Id. at 322; Mems v. City of St. Paul, Dep't of

Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the

evidence, and the inferences reasonably drawn from it, in the light most favorable to the

nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir.

2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The

nonmoving party may not rest on mere allegations or denials, but must show through the

presentation of admissible evidence that specific facts exist creating a genuine issue for

trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified.  When considering the defendant's motion, the Court views the record in the light most favorable to the plaintiff, and when considering the plaintiff's motion, the Court views the record in the light most favorable to the defendant. Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002).  "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact."  Id.

## ANALYSIS

Plaintiffs assert that Defendants' advertising is false and misleading in violation of the Minnesota Consumer Fraud Act (Claim 1), the Minnesota Uniform Deceptive Trade Practices Act (Claim 2), and the Minnesota Unlawful Trade Practices Act (Claim 3). (SAC ¶¶ 86-114.)  The parties agree that the appropriate analysis for these claims is the same as that applied under the Lanham Act.  (Pls. Mem. in Supp. at 14 n.8; ALS Mem. in Supp. at 13.)  To prevail on a false-advertising claim under the Lanham Act, a plaintiff must prove:

> (1) that defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) that the statement actually deceived or would tend to deceive a substantial segment of its audience; (3) that the deception is material, in that it is likely to influence the purchasing decision; (4) that defendant caused its false statement to enter interstate commerce; and (5) that the plaintiff has been or likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant or by a loss of good will associated with its products.

Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc., 83 F. Supp. 2d 1016, 1022 (D. Minn.

2000) (Doty, J.).[4]  In this case, Plaintiffs seek summary judgment on the element of

falsity only,[5] requesting an injunction.  Defendants also seek summary judgment,

asserting that all claims must be dismissed because their advertising is not false or

misleading as a matter of law.  Accordingly, this Court need only address the element of

falsity for purposes of the present Motions.

　　　False statements actionable under the Lanham Act fall into two categories:

"(1) commercial claims that are literally false as a factual matter, and (2) claims that may

be literally true or ambiguous but which implicitly convey a false impression, are

misleading in context, or likely to deceive consumers."  Surdyk's, 83 F. Supp. 2d at 1022

(internal quotation marks and citation omitted).  When assessing literal falsity, a court

will conduct a two-part inquiry: "(1) whether the challenged advertisement conveys an

explicit factual message, and (2) whether that explicit factual message is false."  Id.  In

making this inquiry, the Court must view advertisements in their full context, including

visual imagery.  United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180-81 (8th Cir.

1998).

---

[4] The requirement under the Lanham Act that the defendant cause its false statement to enter
interstate commerce is not required under the Minnesota Statutes applicable to this action.

[5] Defendants assert that Plaintiffs cannot move for summary judgment on only one element of
their false-advertising claim.  (ALS Mem. in Opp'n at 14-15.)  It is true that summary judgment
may not be had "as to one portion of a claim."  Four D, Inc. v. Dutchland Plastics Corp., Civ. No.
01-2073, 2003 WL 1842838, at *6 (D. Minn. Apr. 8, 2003) (Kyle, J.).  However, "claims are
separable when there is more than one possible recovery and the recoveries are not mutually
exclusive."  Id. (internal quotation marks and citation omitted).  As described below, Plaintiffs'
Motion is dispositive on the issue of injunctive relief, and therefore, the Motion is proper.

To determine whether an advertisement is not literally false but misleading, the Court must asses whether "the advertising actually conveyed [an] implied message and thereby deceived a significant portion of the recipients." Id. at 1182.  Thus, "the success of the claim usually turns on the persuasiveness of a consumer survey." Id. at 1183.

## I.      What advertisements the Court may consider

As a preliminary matter, Defendants argue at length that the advertisements the Court may consider are limited to those Plaintiffs specifically recall reviewing and relying upon in making their purchases.  Specifically, Defendants assert that the Court is limited to finding whether the terms "elimination" and "reactivation" are literally false or misleading, as these are the only statements Plaintiffs recall with specificity.  (ALS Mem. in Opp'n at 31-45; ALS Mem. in Supp. at 36-38; Gander Mem. in Supp. at 6-8; Cabela's Wholesale Mem. in Supp. at 6-9.)  The Court does not agree.

For the purposes of the present Motion, Plaintiffs argue that a variety of Defendants' advertisements are literally false and therefore request an injunction.  When an advertisement is literally false, the Court "need not consider the remaining Lanham Act . . . elements in order to grant Plaintiffs injunctive relief." Minn. Life Ins. Co. v. AXA Invest. Mgr., Civ. No. 03-4383, 2005 WL 1475336, at *7 (D. Minn. June 22, 2005) (Frank, J.).  Thus, Plaintiffs are entitled to injunctive relief if literal falsity is established.

Defendants assert that even if Plaintiffs have statutory standing to obtain injunctive relief, they lack constitutional standing to challenge advertisements they do not recall reviewing with specificity.  "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an injury-in-fact, (2) a causal relationship between

the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision."  Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008) (internal quotation marks and citation omitted).  Defendants argue that Plaintiffs cannot satisfy the second element without establishing the precise advertisements and language relied upon.[6]

The Court finds that Plaintiffs' inability to recall the specific advertisements relied upon with precision does not divest them of constitutional standing to challenge Defendants' advertising campaign.  The record indicates that Plaintiffs were exposed to countless advertisements, stemming from all Defendants, and do recall reading and relying upon several specific advertisement claims, other than the terms "elimination" and "reactivation."  (Brosi Dep. Tr. at 29, 32, 40; Brosi Decl. ¶¶ 3-8; Buetow Dep. Tr. at 45, 65; Buetow Decl. ¶¶ 3-9; Deeb Dep. Tr. at 44-45; Deeb Decl. ¶¶ 3-4; Richardson Dep. Tr. at 26; Richardson Decl. ¶¶ 3-8; Rohrbach Dep. Tr. at 29, 32, 119; Rohrbach Decl. ¶¶ 3-9.)[7]  The advertisements relied upon by Plaintiffs are fairly representative of Defendants' advertising campaign challenged in this action.  The fact that Plaintiffs cannot recall each advertisement relied upon or the precise language of such

---

[6] The Court is not blind to the fact that Defendants are attempting to prevent the Court from reviewing those advertisements that are the most likely to be found literally false.  Specifically, Defendants do not want the Court to review their advertisements making the strongest "elimination" and "reactivation" claims.

[7] Defendants contend that Plaintiffs' Declarations should not be considered by the Court because they are more specific and contradictory to their discovery responses.  (ALS Mem. in Supp. at 38 n.26.)  However, such affidavits may be considered if the information contained therein is not contradictory to deposition testimony, but merely provides more detail or is explanatory.  Morgan v. Francois, 170 Fed. Appx. 978, 981 (8th Cir. 2006).  The Court finds that Plaintiffs' Declarations do not contradict their previous testimony, and therefore will be considered.

advertisements does not divest them of standing to challenge a purportedly false advertising campaign to which they were undisputedly exposed.  Accordingly, the Court finds that Plaintiffs have established an injury "fairly traceable" to Defendants' advertisements sufficient to have standing to obtain an injunction.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (holding that to have Article III standing a plaintiff's injury must be "fairly traceable" to the challenged actions of the defendant).[8]

## II.  False or misleading advertisements

For purposes of the present Motions, Plaintiffs and Defendants have each submitted to the Court what they believe to be a representative set of advertisements. (Leach Decl. Exs. 7-22, 49, 53, 55-56; Wilde Decl. Exs. 15-26, 28-31, 34; Grumbles Decl. Exs. 4, 13-14, 25, 32-33.)  Plaintiffs assert that two general claims made in these advertisements are literally false and misleading:  the "elimination" claim and the "reactivation" claim.  The Court addresses each below.

### A.  The "elimination" claim

Defendants' advertisements claim that their carbon-embedded clothing has the ability to "eliminate" odor.  This claim is communicated to consumers in numerous ways described below.

---

[8] The Court need not parse out which Plaintiffs reviewed which advertisements published by each Defendant.  For the purpose of obtaining injunctive relief, it is sufficient to note that at least one Plaintiff has standing against each Defendant based upon their review of such Defendant's advertisements and the purchase of their carbon-embedded clothing.

### 1.      Slogans and the term "elimination"

Several of Defendants' advertisements simply utilize the slogans "odor-eliminating technology" or "odor-eliminating clothing" without further elaborating on the clothing's ability to control odor.  (Wilde Decl. Exs. 17-18, 24, 28; Grumbles Decl. Ex. 32.)  Other advertisements utilize these slogans and other phrases such as "eliminates all types of odor" or "odor elimination."  (Wilde Decl. Exs. 20, 21, 23, 26.)  The Court finds these advertisements to be literally false as a matter of law.  While the parties' experts have different opinions regarding the extent to which carbon-embedded clothing will reduce odor, all agree that the clothing cannot eliminate odor, even when new.

The word "eliminate" is subject to only one reasonable interpretation - complete elimination.  In determining the meaning of challenged advertisements, a court may reference dictionary definitions.  See Am. Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 391 (8th Cir. 2004) (referencing a dictionary definition of "favorite").  The Compact Oxford English Dictionary provides that the word "eliminate" means "[t]o expel, exclude, remove, get rid of."  The Compact Oxford English Dictionary 141 (2d ed. 1989).  The American Heritage Dictionary provides that the word "eliminate" means "to wipe out someone or something, especially by using drastic methods such as banishment or execution."  The American Heritage Dictionary 580 (4th ed. 2000).  Thus, the word "eliminate" denotes a complete removal such that the word "complete" is unnecessary and repetitive.[9]

---

[9] The Third Circuit addressed a similar factual scenario when an advertisement stated that a product could "eliminate" a medical condition.  Belmont Labs., Inc. v. Fed. Trade Comm'n, 103

Defendants have submitted several dictionary definitions equating the word "eliminate" with "remove." (Andre Decl. Exs. 12-14.) Defendants argue that because their carbon-embedded clothing removes a substantial amount of odor, its advertisements are not literally false. However, the Court finds that the use of the word "remove" would also be literally false if used in Defendants' advertisements. Here an example is helpful. If an advertisement states that a product will <u>remove</u> roaches from a home, the only reasonable expectation would be that <u>all</u> roaches would be removed, not just <u>some</u>.[10] Accordingly, the Court finds Defendants' advertisements utilizing the "elimination" terminology, without further explanation, to be literally false.

### 2.    "Scent-free," "Odor-free," and "100%" claims

Several of Defendants' advertisements go beyond the use of the word "eliminate" or "elimination" to emphasize that carbon-embedded clothing will eliminate <u>all</u> human odor. (Wilde Decl. Exs. 22-23; Leach Decl. Exs. 7-18, 22, 55; Grumbles Decl. Exs. 4, 13-14.) Such advertisements use phrases such as, "complete scent elimination," "scent-free," "works on 100% of your scent (100% of the time)," "all human scent," "odor is

---

F.2d 538, 540-41 (3d Cir. 1939). When the evidence demonstrated that the product could only "alleviate" the condition for a period of time, the advertisement was found to be false. <u>Id.</u>

[10] Defendants have submitted to the Court several advertisements for various products utilizing "elimination" language. (Wilde Decl. Exs. 10-13.) According to Defendants, these advertisements indicate that the word "eliminate" has several meanings. The Court does not agree. First, there is nothing in the record revealing the capabilities of the products described in these advertisements. Accordingly, such products may indeed "eliminate" what they claim to eliminate. Second, even if such other advertisements claim to <u>eliminate</u> what they can only <u>reduce</u>, such advertisements may also be literally false.

eradicated," or graphics demonstrating that human odor cannot escape carbon-embedded fabric. (Grossi Decl. Ex. 23; Leach Decl. Exs. 7, 15, 17, 18; Grumbles Decl. Ex. 13.)

Because carbon-embedded clothing cannot eliminate odor, the above-referenced advertising is literally false. See POM Wonderful LLC v. Purely Juice, Inc., No CV-07-02633, 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) (holding that the phrase "100% pomegranate" was literally false when a juice product contained substances other than pomegranate juice). Moreover, Defendants' graphics, unambiguously demonstrating that odor cannot escape carbon-embedded fabric, are also literally false. See Time Warner Cable, Inc. v. DirectTV, Inc., 497 F.3d 144, 148 (2d Cir. 2007) ("[A]n advertisement can be literally false even though it does not explicitly make a false assertion, if the words or images, considered in context, necessarily and unambiguously imply a false message.").

### 3.    Advertisements with qualifiers

Finally, several of Defendants' advertisements use the slogans "odor-eliminating technology" or "odor-eliminating clothing," but further qualify this language with words indicating that carbon-embedded clothing cannot eliminate odor. (Wilde Decl. Exs. 15-16, 19, 34; Leach Decl. Exs. 19-21, 53; Grumbles Decl. Ex. 25.) For example, one advertisement utilizes the slogan "odor-eliminating clothing," but later states that activated carbon will "virtually eliminat[e]" odor. (Wilde Decl. Ex. 34.) Yet another advertisement uses the "odor-eliminating technology" slogan, but also states that carbon-embedded clothing "substantially reduces the chance" that a deer will detect a hunter's odor. (Id. Ex. 16.)

The Court finds that these advertisements are not literally false.  When an advertisement is subject to more than one reasonable interpretation, it cannot be literally false.  <u>Time Warner</u>, 497 F.3d at 158.  In this case, while a consumer may understand these advertisements to mean that carbon-embedded clothing can <u>eliminate</u> odor based upon slogan usage, the qualifying language may lead reasonable consumers to understand that the clothing can only <u>reduce</u> odor.  Accordingly, such advertisements are not literally false.

Plaintiffs assert that these advertisements, if not literally false, are still actionable because they are misleading.  However, an advertisement cannot be "misleading" unless the evidence indicates that a "significant portion" of consumers were actually deceived by the advertising.  <u>United Indus.</u>, 140 F.3d at 1182.  As evidence of consumer deception, Plaintiffs' offer their own testimony, along with that of several plaintiffs in related cases. (Pls. Mem. in Opp'n to ALS Mot. at 40-42.)  However, this testimony is "insufficient to create a credible inference of confusion."  <u>DeRosier v. 5931 Bus. Trust</u>, 870 F. Supp. 941, 951 (D. Minn. 1994) (Doty J., adopting Report & Recommendation of Erickson, M.J.) (holding that the testimony of eight affiants was insufficient to create an inference of consumer confusion); <u>accord</u> <u>Davis v. Walt Disney Co.</u>, 393 F. Supp. 2d 839, 846 (D. Minn. 2005) (Frank, J.) ("[A] small group of [plaintiff's] friends, allies, and supporters [does not constitute] a valid survey group from which to determine whether actual confusion exists.").[11]  Accordingly, because Plaintiffs have put forth no evidence

---

[11] Plaintiffs assert that there is evidence in the record that Defendants intended to deceive the public.  (Pls.'s Mem. in Opp'n to ALS Mot. at 42-43.)  However, Plaintiffs cite no authority, and

establishing the confusion of a significant portion of consumers, the advertisements with

qualifying language are not misleading as a matter of law.  Thus, because such

advertisements are not literally false or misleading, they are not actionable.

### B.    The "reactivation" claim

In addition to claiming that their carbon-embedded clothing "eliminates" odor, the

challenged advertisements also state that the clothing can be "reactivated" using a

standard clothes dryer.  Like the "elimination" claim, the "reactivation" claim has been

communicated to consumers in numerous ways.  Plaintiffs assert that the "reactivation"

claims made in Defendants' advertising are literally false because the expert testimony

has established that carbon-embedded clothing cannot be reactivated to be "like new."[12]

### 1.    "Reactivate"

Many of Defendants' advertisements simply state that carbon-embedded clothing

can be "reactivated" for future use without describing the extent of the reactivation.

(Leach Decl. Exs. 16, 21, 55-56.)  For example, one advertisement states "[t]o reactivate

you simply put Scent-Lok in your clothes dryer."  (Id. Ex. 56.)  Plaintiffs assert that

advertisements like this communicate to consumers that carbon-embedded clothing can

---

the Court finds none, holding that such evidence is an acceptable substitute for evidence of actual consumer confusion.  In addition, Plaintiffs cite to six consumer complaint forms submitted to Defendants for defective carbon-embedded clothing.  (Grumbles Decl. Ex. 28.)  Such a small number of complaints do not constitute evidence of consumer confusion.

[12] Defendants assert that Plaintiffs' arguments regarding the literal falsity of the "reactivation" claims are "contrary to the allegations in their pleading" (ALS Mem. in Opp'n at 28), but they misconstrue Plaintiffs' SAC.  Plaintiffs specifically pleaded in their Second Amended Complaint that the "like new" and "pristine" terminology is literally false.  (SAC ¶ 39.)

be reactivated to a "like new" condition.  (Pls. Mem. in Supp. at 22.)  The Court does not agree.

The Court finds that the use of the term "reactivate," or any derivative thereof, is not literally false because it is subject to more than one reasonable interpretation.  The word "reactivate" does not unambiguously convey a complete or total restoration of the carbon-embedded clothing.  Instead, the word "reactivate" could reasonably be interpreted to mean that the clothing can be restored to some extent for continued beneficial use.  According to the American Heritage Dictionary, "reactivate" means "[t]o restore the ability to function or the effectiveness of."  The American Heritage Dictionary 1455 (4th ed. 2000).  Similarly, the Compact Oxford English Dictionary provides that "reactivate" means "[t]o make active or operative again."  The Compact Oxford English Dictionary 258 (2d ed. 1989).  Therefore, while a total restoration of the carbon-embedded clothing is one reasonable interpretation of the term "reactivate," it is not the only interpretation.  Therefore, it cannot be literally false.  Time Warner, 497 F.3d at 158.  Moreover, for the reasons described above, such advertisements are not misleading as a matter of law because Plaintiffs have failed to put forth evidence indicating that a significant portion of consumers were deceived by the advertising.  United Indus., 140 F.3d at 1182.  Accordingly, such advertisements are not actionable.

### 2.  "Like new" and "pristine"

In addition to the advertisements simply stating that carbon-embedded clothing can be reactivated, Defendants published some advertisements which state that reactivation will make the clothing "like new" or "pristine."  (Leach Decl. Exs. 16, 22.)

Such advertisements are literally false, as all experts agree that carbon-embedded fabric, once used, cannot be fully reactivated to be "like new."

Defendants do not dispute that such advertisements are literally false,[13] but state that Plaintiffs do not recall relying on specific advertisements utilizing the "like new" or "pristine" language, and therefore do not have standing to obtain an injunction. However, as described above, the Court finds that Plaintiffs do have standing to obtain an injunction against such literally false advertising. Accordingly, the injunction will be granted.[14]

## III.   Minnesota Uniform Deceptive Trade Practices Act ("MDTPA") Claim

In Minnesota, the "sole statutory remedy for deceptive trade practices is injunctive relief." Simmons v. Modern Aero, Inc., 603 N.W.2d 336, 339 (Minn. Ct. App. 1999) (internal quotation marks and citation omitted). Moreover, "[b]ecause the MDTPA provides injunctive relief for a person likely to be damaged, it provides relief from future damage, not past damage." Gardner v. First Am. Title Ins. Co., 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (Kyle, J.) (quoting Lofquist v. Whitaker Buick-Jeep-Eagle, Inc., No. C5-01-767, 2001 WL 1530907, at *2 (Minn. Ct. App. Dec. 4, 2001)). Defendants

---

[13] Surprisingly, no Defendant asserts that such advertising statements are no longer used.

[14] Defendants assert that Plaintiffs are not entitled to injunctive relief because they have failed to meet the specificity requirements of Federal Rule of Civil Procedure 65(d). Rule 65(d) provides that the Court's order granting an injunction must "state its terms specifically." Fed. R. Civ. P. 65(d)(1)(B). The Court finds that Plaintiffs' request for an injunction is sufficiently specific such that the Court can ascertain the enjoinable advertisements and fashion appropriate injunctive language.

assert that Plaintiffs' MDTPA claim must be dismissed because Plaintiffs are exposed to no risk of future harm.  The Court agrees.

In this case, there is no evidence indicating a risk of future harm to Plaintiffs.  In fact, because Plaintiffs are aware of Defendants' false advertising, they are unlikely to be deceived by such advertising in the future.  Indep. Glass Ass'n, Inc. v. Safelite Group, Inc., Civ. No. 05-238, 2005 WL 3079084, at *2 (D. Minn. Nov. 16, 2005) (Montgomery, J.) (noting that because the plaintiff was now aware of the deceptive trade practices, he was "likely to be vigilant in the future," rendering injunctive relief inappropriate). Accordingly, Plaintiffs' MDTPA claim will be dismissed.[15]

## IV.    Standing to sue Gander Mountain and Cabela's Wholesale

Gander Mountain and Cabela's Wholesale assert that some Plaintiffs do not have constitutional standing to assert a claim against them because such Plaintiffs did not purchase their clothing or rely on their advertising.[16]  (Gander Mem. in Supp. at 5; Cabela's Wholesale Mem. in Supp. at 5.)  Plaintiffs do not contest that such Plaintiffs do not have standing to obtain relief in the form of damages from Gander Mountain or Cabela's Wholesale.  Instead, Plaintiffs assert that all Plaintiffs have standing against all Defendants to obtain injunctive relief.  However, for all practical purposes, only one

---

[15] Defendants do not assert that Plaintiffs must demonstrate a risk of future harm to obtain an injunction under the Minnesota Consumer Fraud Act or the Minnesota Uniform Unlawful Trade Practices Act.

[16] Gander Mountain and Cabela's Wholesale also assert that they cannot be liable for clothing purchases not made in their stores, but at a "garage sale" hosted by another company, Robinson Outdoors.  (Gander Mem. in Supp. at 9; Cabela's Wholesale Mem. in Supp. at 9.)  Plaintiffs concede this point (Pls.'s Mem. in Opp'n to Gander Mot. at 6; Pls.'s Mem. in Opp'n to Cabela's Wholesale Mot. at 6), and therefore the Court need not address it.

named Plaintiff needs to have standing against Gander Mountain and Cabela's Wholesale for an injunction to be effectuated.  Hence, the Court need not (and will not) parse through the record to determine whether each individual Plaintiff has standing against each individual Defendant to obtain injunctive relief.  Plaintiff Rohrbach has reviewed numerous advertisements from Cabela's Wholesale and Gander Mountain, and has purchased carbon-embedded clothing from both Cabela's Wholesale and Gander Mountain.  (Rohrbach Decl. ¶¶ 3-8.)  Accordingly, Rohrbach has standing to obtain injunctive relief against Gander Mountain and Cabela's Wholesale, which is sufficient to make such relief appropriate.

**V.      Standing to sue Cabela's, Inc.**

Cabela's, Inc. asserts that no Plaintiff has constitutional standing to assert a claim against it because it has "not been involved with the marketing or sale of odor adsorbing clothing" since December 1999, years before any Plaintiff made his purchases. (Cabela's, Inc. Mem. in Supp. at 1 (citing Kelsey Decl. ¶ 4).)  However, Plaintiffs assert that Cabela's, Inc. is involved with the advertising of carbon-embedded clothing. Specifically, Plaintiffs highlight the deposition testimony of Everett A. Tarrell, a former Cabela's, Inc. employee, who testified that he had "creative input and creative responsibility" for the advertising of scent-control products.  (Tarrell Dep. Tr. at 26.) Accordingly, there is a genuine issue of material fact as to whether Cabela's, Inc. was involved or continues to be involved with the advertisements challenged in this action, and therefore, Cabela's, Inc.'s Motion for Summary Judgment will be denied.

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that:

1.     ALS's Motion for Summary Judgment (Doc. No. 255), Cabela's, Inc.'s Motion for Summary Judgment (Doc. No. 256), Cabela's Wholesale's Motion for Summary Judgment (Doc. No. 257), and Gander Mountain's Motion for Summary Judgment (Doc. No. 258) are **GRANTED IN PART AND DENIED IN PART**.  With respect to Plaintiffs' claim under the MDTPA, the Motions are **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.  With respect to Defendants' advertisements that claim that carbon-embedded clothing can "eliminate" odor, but further qualify this language with words indicating that the clothing can only reduce odor, the Motions are **GRANTED**.  With respect to Defendants' advertisements that claim that carbon-embedded clothing can be "reactivated," without claiming that the reactivation will make the clothing "like new" or "pristine," the Motions are **GRANTED**. In all other respects, the Motions are **DENIED**;

2.     Plaintiffs' Motion for Summary Judgment (Doc. No. 262) is **GRANTED IN PART AND DENIED IN PART**.  With respect to Defendants' advertisements and graphics that claim that carbon-embedded clothing can "eliminate" odor, without further qualifying that the clothing can only reduce odor, the Motion is **GRANTED**.  With respect to

Defendants' advertisements that claim that carbon-embedded clothing can be "reactivated" to be "like new" or "pristine," the Motion is **GRANTED**.  In all other respects the Motion is **DENIED**; and

3.    On or before May 24, 2010, Plaintiffs shall serve and file a proposed Order of Injunction consistent with this Order.  Objections thereto may be filed within ten (10) days of the receipt thereof.[17]

Dated: May 13, 2010                              s/Richard H. Kyle
                                                 RICHARD H. KYLE
                                                 United States District Judge

---

[17] Such objections shall be confined to the form of the proposed Order of Injunction and shall not address whether the injunction itself is appropriate.