**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Mike Buetow, *et al.*,

                Plaintiffs,          Civ. No. 07-3970 (RHK/JJK)
                                                        **MEMORANDUM OPINION
                                                        AND ORDER**

v.

A.L.S. Enterprises, Inc., *et al.*,

                Defendants.

Renae D. Steiner, Heins Mills & Olson, P.L.C., Minneapolis, Minnesota, Thomas J. Leach, III, Merchant & Gould, PC, Minneapolis, Minnesota, for Plaintiffs.

Naikang Tsao, Theresa A. Andre, Foley & Lardner LLP, Madison, Wisconsin, John D. Sear, Bowman and Brooke LLP, Minneapolis, Minnesota, for Defendants A.L.S. Enterprises, Inc., and Gander Mountain Company.

James K. Langdon, Dorsey & Whitney LLP, Minneapolis, Minnesota, Michael C. Mahoney, Mahoney Anderson LLC, Wayzata, Minnesota, for Defendants Cabela's Incorporation and Cabela's Wholesale, Inc.

        This matter is before the Court on Defendants' Motion to Dismiss (Doc. No. 405). For the reasons that follow, the Motion will be granted.

        This case has suffered through a long and somewhat tortured history, as set forth in the Court's prior Orders in this action and in the related cases previously comprising the <u>In re Activated Carbon-Based Hunting Clothing Marketing and Sales Practices</u>

multidistrict litigation, MDL. No. 09-2059.  Familiarity with the prior proceedings is presumed.[1]

After reversing this Court's injunction restraining the use of certain advertising by Defendants, the Eighth Circuit held that all of Plaintiffs' claims for equitable relief must be dismissed with prejudice.  Buetow v. A.L.S. Enters., Inc., 650 F.3d 1178, 1187 (8th Cir. 2011).  What remained were claims for damages due to Defendants' purportedly unlawful conduct under the Minnesota Consumer Fraud Act ("CFA") and the Minnesota Unfair Trade Practices Act ("UTPA").  Those claims were remanded to this Court for evaluation under "the standards prescribed by the Supreme Court of Minnesota in . . . Ly v. Nystrom, 615 N.W.2d 302, 313–14 (Minn. 2000)."  Id.

Defendants now seek dismissal of Plaintiffs' remaining claims based on Ly, which addressed the scope of the Minnesota Private Attorney General statute, Minn. Stat. § 8.31, subd. 3a (the "Private AG statute").  The statute vests the Attorney General with "broad statutory authority" to "investigate violations of law regarding unlawful business practices" in this state, and it grants private persons "injured by a violation" of those laws the right to "bring a civil action and recover damages, together with costs and disbursements, including . . . reasonable attorney's fees."  615 N.W.2d at 310 (quoting Minn. Stat. § 8.31, subd. 1, 3).  By authorizing private actions for consumer fraud, the statute "eliminate[s] financial barriers to the vindication of a plaintiff's rights [and]

---

[1] See 2008 WL 185710 (D. Minn. Jan. 18, 2008); 564 F. Supp. 2d 1038 (D. Minn. 2008); 259 F.R.D. 187 (D. Minn. 2009); 713 F. Supp. 2d 832 (D. Minn. 2010), rev'd, 650 F.3d 1178 (8th Cir. 2011); 2010 WL 2104641 (D. Minn. May 21, 2010); 2010 WL 2680909 (D. Minn. July 1, 2010); 2010 WL 3781862 (D. Minn. Sept. 22, 2010); 2010 WL 3893807 (D. Minn. Sept. 29, 2010); 2012 WL 72844 (D. Minn. Jan. 10, 2012).

provide[s] incentive for counsel to act as private attorney general." Id. at 311 (citation omitted). Because such an action derives from authority granted to the Attorney General to act on behalf of all Minnesotans, however, Ly recognized that a plaintiff asserting such a claim must "demonstrate that [his] cause of action benefits the public." Id. at 314. In other words, "the sweep of the statute can be no broader than the source of its authority – that of the attorney general – whose duties are to protect *public* rights in the interest of the state." Id. at 313 (emphasis in original).

The plaintiff in Ly alleged that the defendant had violated the CFA in certain misrepresentations regarding the performance of his restaurant, which the plaintiff had been negotiating to purchase. Because the CFA contains no private enforcement mechanism, the plaintiff brought his claim via the Private AG statute. The Minnesota Supreme Court held that the plaintiff could not show his claim served a public benefit, as he "was defrauded in a single one-on-one transaction in which the fraudulent misrepresentation, while evincing reprehensible conduct, was made only to [him]. A successful prosecution of his fraud claim does not advance state interests and enforcement has no public benefit, and [it] is not a claim that could be considered to be within the duties and responsibilities of the attorney general to investigate and enjoin." Id. at 314.

Pointing to Ly, Defendants argue that at this juncture a public benefit no longer exists vis-a-vis Plaintiffs' claims. They contend that this action has devolved into a series of small claims for nominal damages that will not vindicate any public interest, but rather

"simply provide an exclusive remedy to" Plaintiffs and, hence, should be dismissed. (Def. Mem. at 12.) The Court agrees.

At the outset, the Court notes that it must evaluate Plaintiffs' claims as they stand today, not as they were originally pleaded. This is because the public-benefit requirement does not implicate standing, which is typically measured at the time a lawsuit is commenced and generally cannot be lost by subsequent events. Rather, public benefit is a necessary *element* of a plaintiff's cause of action under the Private AG statute. See, e.g., Ly, 615 N.W.2d at 314 & n.25; Workers' Comp. Reinsurance Ass'n v. Wells Fargo Bank, N.A., No. A11-1260, 2012 WL 1253094, at *11 (Minn. Ct. App. Apr. 16, 2012); Collins v. Minn. Sch. of Bus., Inc., 636 N.W.2d 816, 821 (Minn. Ct. App. 2001) ("[An] essential *element* is whether [the] cause of action was [for] a public benefit.") (emphasis added), aff'd, 655 N.W.2d 320 (Minn. 2003).[2] Notably, Plaintiffs do not argue to the contrary. (See Mem. in Opp'n at 10 ("Minnesota . . . courts do not apply the public benefit test as a standing test.").)[3]

---

[2] Notwithstanding these cases, the Eighth Circuit has discussed the public-benefit requirement in terms of "prudential standing," that is, whether "the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute." Davis v. U.S. Bancorp, 383 F.3d 761, 767-68 (8th Cir. 2004). Regardless, unlike Article III standing, prudential standing "must exist at the commencement of the litigation [and] must continue throughout its existence." Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).

[3] Plaintiffs *do* argue that the public-benefit test is relevant only to whether they may recover attorneys' fees under the Private AG statute. (Mem. in Opp'n at 1-2.) They are mistaken; a public benefit is required "[t]o *state a claim*" under the statute. Workers' Comp. Reinsurance, 2012 WL 1253094, at *10; accord, e.g., Scally v. Norwest Mortg., Inc., No. C4-02-2181, 2003 WL 22039526, at *7 (Minn. Ct. App. Sept. 2, 2003) ("We conclude that the private attorney general statute cannot be used *as a vehicle to litigate a . . . claim* unless the cause of action

The Court also rejects Plaintiffs' argument that they need not show a public benefit in order to bring their UTPA claim. It is true, as Plaintiffs note, that the UTPA, unlike the CFA, expressly authorizes a private cause of action for damages. See Minn. Stat. § 325D.15. But that does not aid Plaintiffs here, because they have elected to pursue their remedies not under the UTPA, but rather under the Private AG statute. (See Sear Decl. Ex. A.) And this makes eminent sense, because while the UTPA allows for the recovery of *damages*, it does not provide any mechanism for an award of *attorneys' fees*. In other words, Plaintiffs have opted to proceed under the Private AG statute because it affords them the only avenue to recover fees in this case. See Select Comfort Corp. v. Sleep Better Store, LLC, 796 F. Supp. 2d 981, 985 n.5 (D. Minn. 2011) (Ericksen, J.) (analyzing UTPA claim for public benefit under Private AG statute despite availability of damages under UTPA, since plaintiff had made clear that the claim was brought via Private AG statute).

What is left to be answered, then, is whether Plaintiffs' claims satisfy the public-benefit test at this juncture. Minnesota courts have not "definitively delineate[d] what factors are necessary to establish a public benefit," Workers' Comp. Reinsurance, 2012 WL 1253094, at *11; accord, e.g., Tuttle v. Lorillard Tobacco Co., Civ. No. 99-1550, 2003 WL 1571584, at *5 (D. Minn. Mar. 3, 2003) (Magnuson, J.) (noting that Ly did not set forth a standard to answer the question), and cases construing the public-benefit

---

benefits the public.") (emphasis added); Pecarina v. Tokai Corp., Civ. No. 01-1655, 2002 WL 1023153, at *5 (D. Minn. May 20, 2002) (Montgomery, J.).

requirement are not easily reconciled.[4]  Pointing to Collins, Plaintiffs argue that they satisfy the public-benefit test here because Defendants' allegedly misleading advertisements were distributed to the public at large.  (See Mem. in Opp'n at 13 (arguing that the Minnesota Supreme Court "made clear . . . that the public benefit requirement is satisfied where the defendant made misrepresentations to the public at large and engaged in transactions with a broad section of the public") (internal quotation marks omitted).)

Yet, the Court does not agree that cases interpreting the Private AG statute can be easily distilled into a "public versus non-public" test.  Nor does the Court believe that such a test comports with the statute's purpose.  Notably, several decisions from this Court and Minnesota state courts have concluded that a public benefit was lacking despite allegedly false or misleading statements being made to the public.  For example, in Baker v. Best Buy Stores, LP, 812 N.W.2d 177 (Minn. Ct. App. 2012), the plaintiffs – on behalf of themselves and similarly situated consumers – asserted that the defendant, through "public advertising," had falsely represented the length of coverage provided under service contracts it sold in its stores.  Despite widespread dissemination of the "false" advertising, and despite the plaintiffs seeking to act on behalf of a class, the Minnesota Court of Appeals affirmed the dismissal of the plaintiffs' claims under the Private AG statute, as they could not show "how their action benefits the public."  Id. at

---

[4] Indeed, the Court delayed issuing this Order while awaiting guidance on the question from the Minnesota Supreme Court, which had the issue before it in connection with the appeal in Curtis v. Altria Group, Inc., 792 N.W.2d 836 (Minn. Ct. App. 2010).  Waiting turned out to be a futile exercise, as the Supreme Court decided Curtis on other grounds.  813 N.W.2d 891, 901 n.6 (Minn. 2012).

183.[5]  Pecarina v. Tokai Corp., Civ. No. 01-1655, 2002 WL 1023153, at *5 (D. Minn. May 20, 2002) (Montgomery, J.), reached the same conclusion, in the process specifically rejecting the argument Plaintiffs make here, namely, "proof of a transaction between a large manufacturer . . . and members of the consuming public, and . . . fraud and false advertising perpetrated on the consuming public, [necessarily] bring[] [a] case within the Private AG" statute.

A hypothetical also demonstrates the problem with Plaintiffs' argument. Assume, for example, that a product manufacturer advertised its product to the public at large and an individual, relying on that advertisement, purchased the product. Assume further that the individual, contending that the advertisement was false, later brought an action on his own behalf to recover the difference between the price he paid and the product's actual worth, a small sum. It is difficult to conceive how such an action would benefit the public, despite the manufacturer's advertisement being broadly disseminated.

The foregoing demonstrates why courts addressing the public-benefit issue do not focus solely (or even substantially) on the size of the audience receiving an alleged misrepresentation, but rather hone in on "the relief sought by" the plaintiff. Overen v. Hasbro, Inc., Civ. No. 07-1430, 2007 WL 2695792, at *3 (D. Minn. Sept. 12, 2007) (Kyle, J.) (quoting Zutz v. Case Corp., Civ. No. 02-1776, 2003 WL 22848943, at *4 (D. Minn. Nov. 21, 2003) (Magnuson, J.)); accord, e.g., Select Comfort, 796 F. Supp. 2d at 986. Although there exists no hard-and-fast rule, a public benefit typically will be found when the plaintiff seeks relief primarily aimed at altering the defendant's conduct

---

[5] The Minnesota Supreme Court denied review in Baker.

(usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically through damages). This is because individual damages, generally speaking, merely enrich (or reimburse) the plaintiff to the defendant's detriment; they do not advance a public interest. See Zutz, 2003 WL 22848943, at *4 ("Where recovery is sought for the exclusive benefit of the plaintiff, there is no public benefit.").[6]

For these reasons, the Court concludes that whatever public benefit may have existed when this case was first filed, it no longer exists. While this action once sought injunctive relief altering the nature of Defendants' advertisements, such claims are no more, having been dismissed by the Eighth Circuit. Plaintiffs' attempts at class certification also have failed. This action has, indeed, devolved into a series of small claims for nominal damages. The Court perceives no public benefit that will be vindicated by Plaintiffs continuing to litigate this case; it will serve only to "provide an exclusive remedy" – and a small one, at that – to them. (Def. Mem. at 12.)[7]

---

[6] This is not to suggest that a request for injunctive relief is a prerequisite to finding a public benefit. See Workers' Comp. Reinsurance, 2012 WL 1253094, at *11. Rather, each case turns on its facts, the nature of the allegations, and the scope of the relief requested. For example, a request for an injunction forcing the defendant "to stop and desist from [its] consumer harmful conduct and sales and practices methods" was insufficient to create a public benefit in Kivel v. WealthSpring Mortgage Corp., 398 F. Supp. 2d 1049, 1056 (D. Minn. 2005) (Doty, J.).

[7] A potential future award of attorneys' fees does not alter the public-benefit analysis, as such an award (assuming it were to occur) likely would be *de minimis* in this case. Plaintiffs' alleged damages are minor; the Court would be reluctant to award them hundreds of thousands of dollars in fees, and certainly nowhere near the $4.3 million they previously sought (Doc. No. 373). See, e.g., Farrar v. Hobby, 506 U.S. 103, 114 (1992) ("[T]he degree of the plaintiff's overall success goes to the reasonableness of a fee award," and "[w]here recovery of private damages is the purpose of . . . litigation, a district court, in fixing fees, is obligated to give *primary* consideration to the amount of damages awarded.") (emphasis added).

Plaintiffs argue that "private damages serve a public benefit by deterring wrongful conduct and ensuring that the wrongdoer pays for the consequences of its unlawful activity." (Mem. in Opp'n at 14.) To be sure, "any successful lawsuit [that] recovers damages for an injury caused by a defective product[] could have the *potential* to cause some public benefit." Behrens v. United Vaccines, Inc., 228 F. Supp. 2d 965, 971 (D. Minn. 2002) (Erickson, M.J.) (emphasis added). But "such a broad application of the Private AG Statute" would open the door for "every artful counsel [to] dress up his dog bite case to" fall within the statute's ambit. Id. (quoting Ly, 615 N.W.2d at 312-14). Accordingly, this type of ostensible benefit is too remote or theoretical to pass muster. See, e.g., Bartol v. ACC Capital Holding Corp., Civ. No. 09-2718, 2010 WL 156448, at *6 (D. Minn. Jan. 11, 2010) (Frank, J.) (in action seeking damages and rescission for alleged fraud in connection with foreclosure process, plaintiff's allegation that her claims would "prevent[] foreclosure abuse" was "too remote to satisfy the 'public benefit' requirement"); Burtch v. Oakland Park, Inc., Nos. A05-1585, A05-1587, A05-1588, A05-1589, 2006 WL 1806196, at *5 (Minn. Ct. App. July 3, 2006) ("We recognize that lawsuits brought solely to redress private injuries might have an abstract public benefit, insofar as they serve as a warning to others not to engage in similarly injurious conduct. So, a lawsuit for damages for a dog bite against an owner who has failed to restrain his dog might 'warn' others of the consequences of that conduct, but the public benefit is tangential to the principal purpose of the action, namely, the redress of a private wrong."); Behrens, 228 F. Supp. 2d at 971 (plaintiff sought damages for defendant's alleged misrepresentation that its vaccine was "95 percent effective in preventing

distemper"; "While we understand the Plaintiffs' argument[] that there might be some benefit to the public occasioned by their success in this action, we cannot agree that such a metaphysical potential is sufficient to satisfy the public benefit requirement enunciated in Ly . . . . [While] the loss of any false advertising claim might counsel the advertiser to be more forthright in its advertisement of its other products, we see no real prospect of a public benefit, other than a theoretical one.").

Moreover, assuming *arguendo* that damages achieve a public benefit in some circumstances, only damages adequate to deter "potential future violators" will suffice. In other words, a plaintiff must demonstrate to others engaged in similar conduct "that the consequences of a violation *could be a significant monetary award*." Burtch, 2006 WL 1806196, at *9 (emphasis added).  That is not true here; at most, Plaintiff can recover tens or perhaps hundreds of dollars, and the "costs of trial will greatly exceed any damages recovery." (Doc. No. 398 at 2.)

At bottom, the Court is firmly convinced that "this litigation is so feeble that it is best to end it immediately," as its "only goal . . . appears to be fees for the plaintiffs' lawyers." Robert F. Booth Trust v. Crowley, __ F.3d __, 2012 WL 2126314, at *3 (7th Cir. 2012).  Indeed, it would simply ignore reality to believe that this case is about anything other than fees at this juncture, given the small number of Plaintiffs and the paltry damages they could recover if they were to prevail.  There exists no perceptible public benefit.  Accordingly, Plaintiffs' claims cannot survive.

Finally, the Court pauses to note that even if Plaintiffs' claims had not been dismissed in connection with the instant Motion, they likely would have been shortly

down the line. Without actually saying so, the Eighth Circuit's opinion in this case strongly suggested, in that court's view, that the advertisements challenged by Plaintiffs involved nothing more than "nonactionable puffery." 650 F.3d at 1186-87 ("We doubt there are many hunters so scientifically unsophisticated as to believe that any product can 'eliminate' every molecule of human odor."). Had the Court been required to address the issue, it likely would have felt constrained by the Eighth Circuit's opinion and, following its lead, concluded that the challenged advertisements were not actionable. Dismissal of the case at this juncture, however, obviates the need to reach that question.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 405) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: August 17, 2012  s/Richard H. Kyle
　　　　　　　　　　　　　　　　　　　　　RICHARD H. KYLE
　　　　　　　　　　　　　　　　　　　　　United States District Judge